CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
09/10/2018
JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

**Francisco Guardado Rios**
*on behalf of himself and all others similarly situated*,

*Plaintiffs*,

v.

**Scott Jenkins**,
Sheriff of Culpeper County, Virginia,
*in his individual capacity*,

*Defendant.*

JURY TRIAL DEMANDED

Case No.: 3:18-cv-00082

## CLASS ACTION COMPLAINT

### Introduction

1. For years, Defendant Scott Jenkins, Sheriff of Culpeper County, has held immigrants in his jail past the dates when they had already been ordered released by a state judge or magistrate. Defendant had no legal authority to hold immigrants past their release dates but did so anyways upon receipt of a non-binding voluntary request from federal immigration authorities, despite being on notice of a Virginia Attorney General opinion finding that such a practice is illegal. Whatever the Sheriff's personal opinion on federal immigration policy may be, for local law enforcement officers to incarcerate an individual without legal authority violates the U.S. Constitution.

2. Plaintiff Francisco Guardado Rios is a Virginia resident, whom Defendant held in the Culpeper County Jail past the date he had been ordered released without any legal authority to do so. Mr. Guardado Rios was initially lawfully incarcerated in the Jail on state misdemeanor charges, awaiting his trial and should have been released from custody. He was ordered released

hours after his arrest if he paid a $1,000 bail, but Defendant Scott Jenkins, Sheriff of Culpeper County and warden of the Culpeper County Jail, refused to release him. When Mr. Guardado Rios's friend attempted to pay bail, the magistrate at the Culpeper jail, relying on information from Defendant's deputies, advised that he not pay as Mr. Guardado Rios would not be released even if his bail was paid. Relying on the magistrate's advice that paying bail would be futile, no one paid Mr. Guardado Rios's bail, and Mr. Guardado Rios remained locked in jail for nearly *three months* after he was entitled to be released on bail. And then after his trial, where a Culpeper County General District Court Judge ordered his immediate release on a sentence of time served, Defendant nonetheless held Mr. Guardado Rios in jail for two additional days. For these violations of his constitutional right to liberty, Plaintiff now brings suit.

3. In this case, Sheriff Jenkins chose to keep Plaintiff confined in jail based solely on a request made by a low-level immigration officer with the U.S. Immigration and Customs Enforcement agency ("ICE"). This request came in the form of two DHS forms signed by ICE officers. The first is DHS Form I-247A, known as an as an "immigration detainer" or "ICE detainer." ICE detainers ask state or local law enforcement agencies to continue imprisoning a person beyond the time when that person would normally be released, so that ICE agents can come to the jail and take the person into custody for immigration enforcement purposes. The second is DHS Form I-200, entitled "Warrant for Arrest of Alien," which is an internal ICE document. Neither the ICE detainers nor the Forms I-200 are signed by a judge or magistrate. And thus, they are not judicial warrants because judicial warrants require an independent finding of probable cause issued by a neutral judge or magistrate.

4. Neither Defendant nor his agents possessed independent legal authority to enforce federal civil immigration law at the time of Plaintiff's detention.[1]

5. By his own admission, Sheriff Jenkins has for years maintained a policy and practice of holding individuals in jail past their release dates without any legal justification, based solely on the purported authority of ICE detainers and/or Form I-200s. This practice continued even after a 2015 official opinion of the Virginia Attorney General explained that doing so was illegal.

6. According to data obtained through the federal Freedom of Information Act and released by Syracuse University's Transactional Records Access Clearinghouse at http://trac.syr.edu/phptools/immigration/detain/, during fiscal years 2017 and 2018, Sheriff Jenkins has held nearly one hundred individuals in jail past their release dates without any legal justification, based solely on the purported authority of an ICE detainer and/or Form I-200.

7. Defendant's policy and practice of holding individuals based solely on ICE detainers and or Forms I-200 has resulted in a violation of the civil rights of Plaintiff and all others similarly situated, as they were held in Defendant's custody when they otherwise should have been released.

## JURISDICTION AND VENUE

8. This action arises under the Fourteenth and Fourth Amendments to the U.S. Constitution, and 42 U.S.C. § 1983. The Court has subject-matter jurisdiction over the Plaintiff's federal claim under 28 U.S.C. § 1331 (federal question). The Court has supplemental jurisdiction

---

[1] On April 24, 2018, Sheriff Jenkins signed an agreement with ICE pursuant to 8 U.S.C. § 1357(g), which *does* allow certain specially-designated sheriff's deputies to enforce federal civil immigration law in certain enumerated ways. Such an agreement was not in place at the time of the events complained of herein. The absence of such an agreement prior to April 24, 2018 further evidences that Sheriff Jenkins had no power to enforce federal civil immigration law at all times relevant to this action.

3

over the Plaintiff's state-law tort claim for false imprisonment under 28 U.S.C. § 1367(a) because it arises out of the same set of facts as his federal claim and is so related to the federal claim as to form part of the same case or controversy.

9. The Court has personal jurisdiction over the Defendant because the Defendant is a Virginia resident, and because Defendant's acts or omissions in Virginia gave rise to this complaint.

10. Venue in this Court is proper, as a substantial part of the events or omissions giving rise to this claim occurred in Culpeper, Virginia. *See* 28 U.S.C. § 1391(b)(2) and Local Rules 2(a)(3) and 2(b).

## PARTIES

11. Plaintiff Francisco Guardado Rios is an adult resident of Virginia. He was imprisoned in the Culpeper County Jail from August 13, 2017 to about November 9, 2017.

12. Defendant Scott Jenkins is the Sheriff of Culpeper County, Virginia. In this capacity, he manages the Culpeper County Jail, serves as its warden, and sets Jail policy. At all relevant times, the Sheriff's Office, the Jail, and their agents were acting pursuant to policy decisions made by Defendant Jenkins. Sheriff Jenkins was Plaintiff's jailer. He is sued in his individual capacity.

## STATEMENT OF FACTS

### Defendant's policy of holding immigrants on ICE detainers and/or Form I-200 "warrants" past their release dates

13. In recent years, ICE has ramped up its efforts to conscript local law enforcement officers into its federal work of enforcing civil immigration law. One tool that ICE uses in this regard is a Form I-247A, known as an "immigration detainer" or "ICE detainer."

4

14. ICE detainers are one-page forms sent by ICE to state or local law enforcement agencies, requesting that the local law enforcement agency continue to hold an individual in custody for up to 48 hours after they would otherwise be released, so that ICE can more conveniently make arrangements to take the individual into ICE custody. An ICE detainer is explicitly phrased as a request, not a command ("IT IS THEREFORE REQUESTED THAT YOU: . . . Maintain custody of the alien for a period NOT TO EXCEED 48 HOURS beyond the time when he/she would otherwise have been released from your custody to allow DHS to assume custody."). *See* https://www.ice.gov/sites/default/files/documents/Document/2017/I-247A.pdf (blank ICE detainer form).[2]

15. A growing number of federal courts across the nation have held that an ICE detainer does not provide a sufficient legal basis for a local jail to hold an individual who would otherwise be released under state law. *See, e.g., Roy v. Cty. of Los Angeles*, 2018 WL 914773 (C.D. Cal., Feb. 7, 2018); *Morales v. Chadbourne*, 996 F. Supp. 2d 19, 39–40 (D.R.I. 2014), *aff'd*, 793 F.3d 208 (1st Cir. 2015); *Miranda-Olivares v. Clackamas Cty.*, 2014 WL 1414305, at *11 (D. Or. 2014) ("[T]he County maintains a custom or practice in violation of the Fourth Amendment to detain individuals over whom the County no longer has legal authority based only on an ICE detainer which provides no probable cause for detention."); *Villars v. Kubiatowski*, 45 F. Supp. 3d 791 (N.D. Ill. 2014). At least two state courts have reached the same conclusion. *See Lunn v. Commonwealth*, 78 N.E.3d 1143, 1160 (Mass. 2017) (declaring that

---

[2] ICE detainers are not a necessary law enforcement tool for ICE agents to take suspected immigrants into custody directly from state and local jails. Pursuant to *Code of Va.* § 53.1-220.2, a sheriff or jail warden can release an immigrant to ICE's custody up to five days *before* the immigrant is scheduled to be released from custody on local or state charges. And immigrants being held in jails across the state of Virginia that do not honor these ICE detainer requests or I-200 forms can be -- and are -- picked up by ICE as soon as they pay their bail or finish serving their sentences.

5

Massachusetts law provides no authority for Massachusetts court officers to arrest and hold an individual based solely on an ICE detainer, beyond the time that the individual would otherwise be entitled to be released from state custody); *People ex rel. Swenson v. Ponte*, 994 N.Y.S.2d 841, 844 (N.Y. Sup. Ct. 2014).

16. In 2015, Virginia Attorney General Mark Herring issued a written opinion stating: "[A]n adult inmate or a juvenile inmate with a fixed release date should be released from custody on that date notwithstanding the agency's receipt of an ICE detainer." Attorney General Herring went on to write:

> I conclude that an ICE detainer is merely a request and does not either impose a mandatory obligation or grant legal authority for a law enforcement agency to maintain custody of an individual who is otherwise subject to immediate release from local or state custody. A person has a constitutional liberty interest in not being imprisoned longer than he was sentenced by the sentencing court. Accordingly, an adult prisoner who is eligible for release from custody must be released at his eligible date notwithstanding the agency's receipt of an ICE detainer.

*Legality of ICE Detainer Requests,* 14-067 Op. Va. Att'y Gen (2015), *available at* https://www.oag.state.va.us/files/Opinions/2015/14-067_Stolle.pdf.

17. Upon information and belief, Defendant was aware or had reason to be aware of Attorney General Herring's opinion at the time he decided to detain the Plaintiff past his eligible release date(s).

18. In April 2017, in response to the nationwide wave of judicial and Attorney General opinions holding that ICE detainers do not provide sufficient legal basis for a local jail to hold an individual past the time that the individual would otherwise be released, ICE began a practice of sending local law enforcement officers such as Defendant a second piece of paper along with every Form I-274A ICE detainer: namely, a Form I-200. The Form I-200 is entitled, "Warrant for Arrest of Alien." *See*

6

https://www.ice.gov/sites/default/files/documents/Document/2017/I-200_SAMPLE.PDF (blank Form I-200).

19. Notwithstanding its title, however, the Form I-200 is not an arrest "warrant" in any meaningful sense of the word.

20. Like an ICE detainer, the Form I-200 is not signed by a judge or neutral magistrate, only by an ICE officer.

21. Moreover, the Form I-200 does not even purport to be addressed to a state or local law enforcement officer, but rather to "Any immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations[.]" These sections of code and regulations list only federal officers.

22. Finally, even taking the I-200 administrative warrant at face value, the document does not purport to evidence probable cause that a crime has been committed, but rather that the subject of the warrant "is removable from the United States." Removability from the United States is a federal civil matter, and is of no concern to state or local law enforcement officers. Civil removability certainly does not give state or local law enforcement officers the authority to detain an immigrant. *See, e.g.*, *Arizona v. United States*, 567 U.S. 387, 408 (2012).

23. The Form I-200 is thus, clearly and apparently on its face, an ICE internal document that has no external effect on state or local law enforcement officers. And it certainly does not actually or even purportedly give a state or local law enforcement officer the authority to detain, arrest, seize, or hold an individual whom that officer would otherwise lack any legal authority to hold.

24. Notwithstanding the foregoing, upon information and belief, Defendant continued to direct his subordinates at the Culpeper County Jail to obey and comply with every ICE detainer and/or Form I-200 they received, or, in the alternative, failed to train his subordinates that ICE detainers and/or Form I-200s should not be complied with because they do not provide sufficient legal basis to hold an inmate who would otherwise be released.

25. Upon information and belief, as a result of Defendant's above-mentioned acts or omissions, the Culpeper County Jail continued to hold many inmates past the date on which they should have been released from state custody, based on nothing but an ICE detainer and/or a Form I-200. In testimony before the Culpeper County Board of Supervisors in late 2017, Defendant bragged about the high percentage of immigrant inmates whom the Jail holds until ICE picks them up and takes them into custody.

26. Furthermore, at the direction of Defendant, Culpeper County Jail employees impose unlawful pretrial detention on persons who are the subject of ICE detainers and/or Form I-200s (like Plaintiff), either directly when the Culpeper magistrate's office accepts bail money but then the Sheriff's office refuses to release the person because of the ICE detainer, or indirectly when the magistrate's office advises the arrestee and/or their family members or friends that paying bail will be futile as the individual will remain in jail because of the ICE detainer. Relying on the information relayed from the Sheriff's office through the magistrate that paying bail will be futile, arrestees often opt not to post bail and thus remain incarcerated long after they could have been set free—effectively denying them bail altogether. Both practices violate Va. Code § 19.2-123, requiring detainees who pay the required bail to be released "forthwith."

### Plaintiff Francisco Guardado Rios

27. Plaintiff Francisco Guardado Rios was imprisoned at the Culpeper County Jail on August 13, 2017, after he was arrested for driving without a license and contributing to the delinquency of a minor, both state misdemeanors. *See* Va. Code §§ 46.2-300, 18.2-37.

28. Mr. Guardado Rios's detention at the Culpeper County Jail was authorized solely by state law: he had not been charged with or sentenced for a federal offense, nor was he awaiting transport to a federal Bureau of Prisons facility.

29. That same day, ICE issued and sent to the Jail both a Form I-247A ICE detainer and a Form I-200, each naming Mr. Guardado Rios. *See* Exh. A, the contents of which are incorporated into this Complaint by reference.

30. The ICE detainer requested that the Jail "maintain custody of the alien for a period NOT TO EXCEED 48 HOURS beyond the time he/she would otherwise be released…" so that ICE officials could come to the Jail and take Mr. Guardado Rios into ICE custody.

31. The ICE detainer was signed by an ICE deportation officer identified as "B. Mednick," and by Culpeper Sheriff's Deputy J. Glascock. It was not signed by a judge.

32. The ICE detainer contained no finding of probable cause by a neutral magistrate that might have supported Plaintiff's continued detention. The ICE detainer did not allege that Mr. Guardado Rios had violated any federal or state criminal law, but only that he "lacks immigration status or notwithstanding such status is removable under U.S. immigration law"—a matter that was wholly outside of Defendant's purview, as Defendant had no legal authority to enforce U.S. civil immigration law.

33. Likewise, the Form I-200, which was not even addressed to Defendant or to any state or local law enforcement officer, was not signed by a judge or neutral magistrate; gave no

9

factual basis for its purported finding of probable cause; and granted the Defendant no special power to enforce federal civil immigration law. The Form I-200 thus clearly did not provide a legal basis for the continued detention of Mr. Guardado Rios, whether on its own or together with the detainer.

34. Just hours after his initial arrest on August 13, 2017, Mr. Guardado Rios had a preliminary hearing before a Culpeper magistrate judge, who ordered him released from the Jail upon payment of $1,000 bail. A friend of Mr. Guardado Rios went to the Jail to pay the bail that same day.

35. When Mr. Guardado Rios's friend arrived at the Jail, however, he was told by the magistrate that he should not pay Mr. Guardado Rios's bail. The magistrate, who works inside the Culpeper jail, told the friend that because Mr. Guardado Rios was the subject of an ICE detainer, Mr. Guardado Rios would not be released even if his bail was paid. Relying on what the magistrate told him, Mr. Guardado Rios's friend did not pay his bail. Upon information and belief, when a person requests to pay the bail of an inmate at the Culpeper jail, it is the responsibility of the magistrate to consult with Defendant or his personnel to confirm the bail amount and whether bail can be accepted for the individual's case. When an ICE detainer is logged on an inmate's case, such information is also relayed to the magistrate. Upon information and belief, it is common practice of the Culpeper County Jail, at the direction of Defendant, to effectively deny bail in this manner to inmates who have been named in ICE detainers and/or Form I-200s, even when release on bail has been ordered by a court.

36. Mr. Guardado Rios's trial on the pending charges was initially set for August 22, 2017 but was later rescheduled to November 7, 2017. Mr. Guardado remained in jail the entire time—nearly *three months longer* than he would have if the Jail had accepted his friend's

10

Case 3:18-cv-00082-GEC   Document 1   Filed 09/10/18   Page 10 of 17   Pageid#: 10

payment and released him on bail.

37. At trial, Mr. Guardado Rios was convicted in the Culpeper General District Court of violating Va. Code § 18.2-371 and sentenced to 30 days confinement with 20 days suspended. Because he had already spent far more than 10 days in jail, the court ordered his immediate release for time served under Va. Code § 53.1-187.

38. Despite the court's order, however, Mr. Guardado Rios was *still* not released: at the direction of Defendant, the Culpeper County Jail kept him locked up for approximately two additional days. On or about November 9, 2017, Mr. Guardado Rios was transferred to the custody of ICE.

39. On information and belief, Defendant's agents effectively denied Mr. Guardado Rios the right to be released on bail, and then continued to hold him in jail even after the court ordered his release for time served, solely because of the ICE detainer and/or Form I-200.

40. As a result of being effectively denied bail and then held in the Culpeper County Jail nearly three months beyond the time when he should have been released, Mr. Guardado Rios has suffered damages, including but not limited to emotional distress. Plaintiff Guardado Rios also lost the opportunity to return to his home to arrange his affairs prior to being taken by ICE into custody on civil immigration charges.

**Class Action Allegations**

41. Plaintiff Francisco Guardado Rios seeks to represent a class of all individuals who:

   a. were held by Defendant at the Culpeper County Jail, past the date and time on which they would otherwise have been released on their state charges—whether because they were ordered released on their own recognizance, paid their bail,

attempted to pay their bail but were effectively denied the opportunity to do so by Defendant, finished serving their time, or for any other reason;

b. from September 21, 2016 through the date of judgment in this action; and

c. who were the subject of a Form I-247A ICE detainer and/or Form I-200, sent by ICE to the Culpeper County Jail.

42. Plaintiff reserves the right to amend the class definitions or establish sub-classes as appropriate if discovery or further investigation reveals that the class should be expanded or otherwise modified.

43. This action is brought and properly may be maintained as a class action under Fed. R. Civ. P. 23(a)(1)-(4).

44. <u>Numerosity</u>: The proposed class is so numerous that joinder of all members is impracticable. While the precise size of the class is unknown, Plaintiff has reason to believe that it approximates 100 people. Specifically, data obtained through the federal Freedom of Information Act and released by Syracuse University's Transactional Records Access Clearinghouse at http://trac.syr.edu/phptools/immigration/detain/ show that during fiscal years 2017 and 2018, Sheriff Jenkins has held nearly one hundred individuals in jail past their release dates without any legal justification, based solely on the purported authority of an ICE detainer and/or Form I-200. Additionally, the Sheriff stated, "Currently, about 50 to 70 percent of suspected undocumented inmates in the Culpeper jail are detained and transferred to the custody of ICE." Culpeper Star Exponent, https://www.starexponent.com/news/sheriff-defends-plan-for-deputies-to-enforce-immigration-law/article_d3a2e742-a8d7-51b6-b31f-0c9637e05ade.html (last visited Aug. 9, 2018).

45. <u>Commonality</u>: There are multiple questions of law and fact common to the members of the proposed class. These common questions include whether Form I-247A ICE detainers and/or Form I-200s authorize Defendant or his agents to detain individuals who are otherwise no longer legally detainable; and whether Defendant's policy of holding individuals based solely on such ICE detainers and/or Form I-200s violated those individuals' constitutional rights.

46. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the proposed class, as all class members were subject to a deprivation of liberty proximately caused by Defendant's policy of holding individuals based solely on the receipt of an ICE detainer and/or Form I-200.

47. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the proposed class. Plaintiff's claims are identical to the members of the proposed class, they have no relevant conflicts of interest with other members of the proposed class, they have retained competent counsel experienced in class actions, civil rights, and immigration law who has made the appropriate arrangements to the cover the anticipated expenses associated with litigation of this case.

48. This action is brought and properly may be maintained as a class action under Fed. R. Civ. P. 23(b)(1)(A), (b)(2) (declaratory relief), or (b)(3).

49. Separate actions by individual class members would create a risk of inconsistent or varying adjudications regarding the proposed class members' common legal questions, including: (1) whether Form I-247A ICE detainers and/or Form I-200s authorize Defendant or his agents to detain individuals who are otherwise no longer legally detainable; and (2) whether Defendant's policy of holding individuals based solely on such ICE detainers and/or Form I-200s violated those individuals' constitutional rights.

50. Defendant has long taken the position that his receipt of an ICE detainer and/or Form I-200, without more, is sufficient legal basis for him to hold an individual in his Jail. Thus, final declaratory relief and a final adjudication as to liability is appropriate respecting the proposed class as a whole, even if each class member would have suffered different damages based on, for example, the length of time for which they were unlawfully held, and the individual consequences stemming therefrom.

51. Common questions of law or fact predominate over questions affecting only individual members, and a class action is thus superior to other available methods for fairly and efficiently adjudicating the controversy. Even if individual class members (all or nearly all of whom are immigrants, and many of whom speak little English) had the resources to bring individual lawsuits, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties, and to the court. Defendant has engaged in a common course of conduct, and the class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' common claims in a single forum.

## CAUSES OF ACTION

### I. Fourteenth Amendment Violation

52. Plaintiff, on behalf of himself and all others similarly situated, incorporate by reference the allegations in paragraphs 1-51.

53. The Fourteenth Amendment guarantees due process to all individuals within the United States. Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of liberty interests protected under the Due Process Clause of the Fourteenth Amendment. *See Mathews v. Eldridge*, 424 U.S. 319, 338 (1976).

54. As set forth above, Defendant's policy and practice of holding individuals in custody was based solely on receipt of an ICE detainer and/or Form I-200, without any basis in state law, without judicial review, and solely as a means of enforcing federal civil immigration statues.

55. The Due Process Clause protects against the deprivation of liberty interests without the due process of law and requires notice and opportunity to be heard prior to the deprivation as well as a method by which to challenge the deprivation. The prolonged detention of the Plaintiff, and all others similarly situated, without due process, violated his rights under the Fourteenth Amendment to the U.S. Constitution.

56. As a result of this deprivation of his rights, Plaintiff and all others similarly situated have suffered injury.

## II. (In the alternative) Fourth Amendment Violation

57. Plaintiff incorporates by reference the allegation in paragraphs 1-56.

58. Should the Court find that the Plaintiff and the class members were seized by the Defendant or on his authority within the meaning of the Fourth Amendment following the expiration of the time that they were lawfully committed to his custody, such that they could not leave as they should have been able to leave, then such seizure by the Defendant violated the rights of the Plaintiff and the class members to be free from unreasonable seizure, which right is guaranteed by the Fourth Amendment to the U.S. Constitution.

59. As a result of this deprivation of his rights, Plaintiff and all others similarly situated have suffered injury.

## III. False Imprisonment (Virginia Common Law)

60. Plaintiff, on behalf of himslef an all others similarly situated, incorporate by

reference the allegations in paragraphs 1-59.

61. As set forth above, Defendant caused the Plaintiff, and all others similarly situated, to be held against their will and without any basis under state or federal law, to their injury, thereby committing the tort of false imprisonment under Virginia common law.

## RELIEF REQUESTED

For the foregoing reasons, Plaintiff respectfully ask this Court to grant the following relief:

1. Assume jurisdiction over this matter, certify a class as set forth above pursuant to Fed. R. Civ. P. 23, and appoint the Legal Aid Justice Center and Victor M. Glasberg and Associates as class counsel;

2. Declare unlawful Defendant's policy of holding individuals in custody based on nothing more than the receipt of a Form I-247A ICE detainer and/or Form I-200;

3. Award damages, including consequential damages, punitive damages, and emotional distress damages, to the Plaintiff and all others similarly situated, arising from their unlawful detention, in an amount to be proven at trial;

4. Award Plaintiff his reasonable attorney's fees and costs of suit; and

5. Grant any other relief the Court finds just and proper.


Plaintiff demands trial by jury.

Respectfully submitted,

_____//s//_____   Date: September 10, 2018
Sophia Gregg (VSB No.: 91582)
*sophia@justice4all.org*
Simon Y. Sandoval-Moshenberg (VSB No.: 77110)
*simon@justice4all.org*
Rachel Nadas (VSB No.: 89440)
*rnadas@justice4all.org*
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
(703) 778-3450 / fax (703) 778-3454

Victor M. Glasberg (VSB No. 16184)
Maxwelle C. Sokol (VSB No. 89589) *pro hac vice* admission pending
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA 22314
(703) 684-1100 / fax (703) 684- 1104
*vmg@robinhoodesq.com*

*Attorneys for the Plaintiff and all others similarly situated*