CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 15 2019

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

FRANCISCO GUARDADO RIOS, on behalf )
of himself and all others similarly )
situated, )
)
    Plaintiff, )
)
v. )
)
SCOTT JENKINS, Sheriff of Culpeper County, )
Virginia, in his individual capacity, )
)
    · Defendant. )

Civil Action No. 3:18CV00082

**MEMORANDUM OPINION**

By: Hon. Glen E. Conrad
Senior United States District Judge

Francisco Guardado Rios filed this action against Scott Jenkins, Sheriff of Culpeper County, Virginia, on behalf of himself and others similarly situated, pursuant to 42 U.S.C. § 1983. Rios alleges that Jenkins' policy of holding individuals in custody for up to 48 additional hours at the request of the Immigration and Customs Enforcement ("ICE") division of the Department of Homeland Security ("DHS") violated the Fourth and Fourteenth Amendments to the United States Constitution. The case is presently before the court on the defendant's motion to dismiss. For the reasons set forth below, the plaintiff's claims under § 1983 will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The court will decline to exercise supplemental jurisdiction over the remaining claim of false imprisonment in violation of Virginia law.

**Statutory and Legal Background**

The court begins with the relevant statutory and legal background, which provides a framework for understanding the facts alleged in the complaint.

The federal government has "broad, undoubted power over the subject of immigration and the status of aliens." Arizona v. United States, 567 U.S. 387, 394 (2012); see also U.S. Const. art.

I, § 8, cl. 4 (granting Congress the power to "establish an uniform Rule of Naturalization"). In 1952, Congress enacted the Immigration and Nationality Act ("INA"), 66 Stat. 163, as amended, 8 U.S.C. § 1101, et seq. "That statute established a 'comprehensive federal statutory scheme for regulation of immigration and naturalization' and set 'the terms and conditions of admission to the country and the subsequent treatment of aliens lawfully in the country.'" Chamber of Commerce of the United States v. Whiting, 563 U.S. 582, 587 (2011) (quoting De Canas v. Bica, 424 U.S. 351, 353, 359 (1976)).

Congress has empowered the Secretary of DHS to enforce the INA. Nielsen v. Preap, 139 S. Ct. 954, 959 n.2 (2019). This includes authority to "arrest and hold an alien 'pending a decision on whether the alien is to be removed from the United States.'" Id. at 959 (quoting 8 U.S.C. § 1226(a)). Although removal proceedings are civil in nature, rather than criminal, Immigration & Naturalization Serv. v. Lopez-Mendoza, 468 U.S. 1032, 1038 (1984), the Supreme Court has recognized that "[d]etention during removal proceedings is a constitutionally permissible part of that process," Demore v. Hyung Joon Kim, 538 U.S. 510, 531 (2003); see also Arizona, 567 U.S. at 407 ("As a general rule, it is not a crime for a removable alien to remain present in the United States . . . . The federal statutory structure instructs when it is appropriate to arrest an alien during the removal process. For example, the Attorney General can exercise discretion to issue a warrant for an alien's arrest and detention pending a decision on whether the alien is to be removed from the United States.") (citations omitted).

"Because the Constitution grants Congress plenary authority over immigration, state and local law enforcement officers may participate in the enforcement of federal immigration laws only in 'specific, limited circumstances' authorized by Congress." Santos v. Frederick Cty. Bd. of Comm'rs, 725 F.3d 451, 463 (4th Cir. 2013) (quoting Arizona, 567 U.S. at 410). For instance,

2

"[l]ocal law enforcement officers may assist in federal immigration efforts under 8 U.S.C. § 1357(g)(1)," which authorizes ICE to enter into written agreements with local law enforcement agencies that allow local officers to perform the functions of federal immigration officers. Id. at 463–64; see also United States v. Sosa-Carabantes, 561 F.3d 256, 257 (4th Cir. 2009) ("The 287(g) Program permits ICE to deputize local law enforcement officers to perform immigration enforcement activities pursuant to a written agreement.").[1] "Even in the absence of a written agreement," local law enforcement officers may "'cooperate'" with federal immigration enforcement efforts pursuant to § 1357(g)(10). Santos, 725 F.3d at 464 (quoting 8 U.S.C. § 1357(g)(10)(B)). Because the parties focus heavily on this provision of the INA, the court quotes it in full:

> Nothing in this subsection shall be construed to require an agreement under this subsection in order for an officer or employee of a State or political subdivision of a State—
>
> (A) to communicate with the Attorney General regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States; or
>
> (B) otherwise cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States.

8 U.S.C. § 1357(g)(10).

In Arizona v. United States, the Supreme Court recognized that "[t]here may be some ambiguity as to what constitutes cooperation" under this provision of the INA. 567 U.S. at 410. The Court ultimately concluded that "no coherent understanding of the term would incorporate the unilateral decision of state officers to arrest an alien for being removable absent any request, approval, or other instruction from the Federal Government." Id. "Thus, Arizona v. United

---

[1] The term "287(g)" refers to the section of the INA that authorizes these agreements. City of El Cenizo v. Texas, 890 F.3d 164, 177 n.5 (5th Cir. 2018).

3

*States* makes clear that under Section 1357(g)(10) local law enforcement officers cannot arrest aliens for civil immigration violations absent, at a minimum, direction or authorization by federal officials." *Santos*, 725 F.3d at 466.

"One way in which ICE requests cooperation of state officials without written agreements is by issuing a Form I-247 immigration detainer." *Abriq v. Metro. Gov't of Nashville & Davidson Cty.*, 333 F. Supp. 3d 783, 787 (M.D. Tenn. 2018); *see also Lopez-Lopez v. Cty. of Allegan*, 321 F. Supp. 3d 794, 797 (W.D. Mich. 2018) (explaining that the issuance of a Form I-247 immigration detainer is "[o]ne method in which the federal government requests the cooperation of state authorities"). Such detainers "serve[] to advise another law enforcement agency that [ICE] seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien." 8 C.F.R. § 287.7(a). The detainers "ask two things of the state or local agency: that it notify ICE at least 48 hours before a removable alien is released from custody; and that it detain a removable alien for up to 48 hours past the time that the alien would have otherwise been released to allow ICE to apprehend the individual." *City of Philadelphia v. Attorney Gen. of the United States*, 916 F.3d 276, 281 (3d Cir. 2019); *see also* 8 C.F.R. § 287.7(a), (d).

As of April 2, 2017, ICE policy requires that immigration detainers be accompanied by a signed administrative warrant attesting to probable cause of removability from the United States. *City of Philadelphia*, 916 F.3d at 281; *Lopez-Lopez*, 321 F. Supp. 3d at 797. "Administrative warrants differ significantly from warrants in criminal cases in that they are not issued by a detached and neutral magistrate." *Lopez-Lopez*, 321 F. Supp. 3d at 799. Instead, "the warrants are executed by federal officers who have received training in the enforcement of immigration law." *Arizona*, 567 U.S. at 408 (citing 8 C.F.R. §§ 241.2(b), 287.5(e)(3)). The use of such

4

warrants has long been authorized by statute. See 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."); see also Abel v. United States, 362 U.S. 217, 234 (1960) (noting that there is "overwhelming historical legislative recognition of the propriety of administrative arrest for deportable aliens").

## Factual Background

Against this backdrop, the court turns to the factual allegations in this case, which are taken from the complaint and the attached exhibits. See Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016) (noting that the court may consider exhibits to a complaint when ruling on a motion to dismiss).

On August 13, 2017, Rios was arrested for two misdemeanor offenses under Virginia law: driving without a license and contributing to the delinquency of a minor. Compl. ¶ 27, Dkt. No. 1. He was committed to the custody of the Culpeper County Jail (the "Jail"), which is managed and supervised by Jenkins. Id. ¶¶ 12, 27.

That same day, the Jail received two forms from ICE: a DHS Form I-247A Immigration Detainer – Notice of Action ("ICE detainer") and a DHS Form I-200 Warrant for Arrest of Alien ("administrative warrant"). The ICE detainer indicated that DHS had determined that there was probable cause to believe that Rios was a removable alien. Compl. Ex. A, Dkt. No. 1-2. It requested that the Jail "[n]otify DHS as early as practicable (at least 48 hours, if possible) before the alien is released from [the Jail's] custody." Id. The ICE detainer also requested that the Jail "[m]aintain custody of the alien for a period NOT TO EXCEED 48 HOURS beyond the time when he/she would otherwise have been released from [the Jail's] custody to allow DHS to assume custody." Id. (emphasis in original). The ICE detainer indicated that "[t]he alien must be served

5

with a copy of this form for the detainer to take effect." Id. The form was signed by Immigration Officer B. Mednick. Id.

The accompanying administrative warrant was directed to the attention of "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act and [the associated regulations] to serve warrants of arrest for immigration violations." Compl. Ex. B, Dkt. No. 1-2. The ICE warrant indicated that an immigration officer had "determined that there is probable cause to believe that [Rios] is removable from the United States." Id. It "commanded" that Rios be "arrest[ed] and take[n] into custody for removal proceedings under the Immigration and Nationality Act." Id. The warrant was signed by Immigration Officer C. Wamsley. Id.

Deputy J. Glascock signed both ICE forms on behalf of the Jail. The deputy indicated that the forms were served on Rios on August 13, 2017. See Compl. Exs. A & B.

Hours after his arrest on state charges, Rios appeared before a magistrate, who set bond at $1,000.00. Compl. ¶ 34. Rios alleges that when an unidentified "friend" arrived to post bond, the magistrate indicated that the existing ICE detainer would prevent Rios from being released. Id. ¶ 35. Based on the magistrate's representations, the plaintiff's friend declined to post bond. Id.

Rios was initially scheduled to go to trial on the state charges on August 22, 2017. Id. ¶ 36. The trial was continued until November 7, 2017. Id. Rios remained in the custody of the Jail while awaiting trial. Id.

Rios was convicted of contributing to the delinquency of a minor, in violation of Virginia Code § 18.2-371. Id. ¶ 37. He was sentenced to 30 days in jail, with 20 days suspended. Id.

6

Because Rios had already been in custody more than 10 days, the state court "ordered his immediate release for time served under Va. Code § 53.1-187." Id.

Based on the ICE detainer and the accompanying warrant, Rios was held at the Jail for "approximately two additional days." Id. On November 9, 2017, "Rios was transferred to the custody of ICE" on "civil immigration charges." Id. ¶¶ 38, 40.

Rios alleges that during fiscal years 2017 and 2018, Jenkins held nearly one hundred individuals in jail past their release dates, "based solely on the purported authority of an ICE detainer and/or Form I-200 [administrative warrant]." Id. ¶ 7. During the time period in question, Jenkins did not have a formal cooperation agreement with ICE. Id. at 3 n.1. On April 24, 2018, Jenkins and ICE entered into a written agreement pursuant to § 287(g) of the INA . Id.

In the instant action, Rios claims that Jenkins' policy and practice of holding individuals solely on the basis of an ICE detainer and administrative warrant "resulted in a violation of the civil rights of [Rios] and all others similarly situated, as they were held in [Jenkins'] custody when they otherwise should have been released." Id. ¶ 7. In Count I of the complaint, Rios seeks monetary relief under 42 U.S.C. § 1983 based on an alleged violation of the Due Process Clause of the Fourteenth Amendment. In Count II, Rios seeks monetary relief under § 1983 based on an alleged violation of the Fourth Amendment. In Count III, Rios asserts a claim of false imprisonment in violation of Virginia law.

## Procedural History

Rios filed the instant action against Jenkins on September 10, 2018. Jenkins has moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The United

States has filed a statement of interest in support of the defendant's motion. The motion has been fully briefed and argued and is now ripe for disposition.[2]

## **Standard of Review**

Rule 12(b)(6) permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Erickson v. Pardus, 551 U.S. 89, 94 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

"Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996). One such defense is qualified immunity. Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011) (citing Jenkins v. Medford, 119 F.3d 1156, 1159 (4th Cir. 1997) (en banc)).

---

[2] On April 17, 2019, the plaintiff moved for leave to submit supplemental authority in support of his brief in opposition. The court will grant the plaintiff's motion.

8

## Discussion

### I.     Claims under § 1983

The court will first address the plaintiff's claims under 42 U.S.C. § 1983.   "Section 1983 . . . is not an independent source of substantive rights, but simply a vehicle for vindicating preexisting constitutional and statutory rights."   Safar v. Tingle, 859 F.3d 241, 243 (4th Cir. 2017) (citing Graham v. Connor, 490 U.S. 386, 393–94 (1989)).   The statute imposes civil liability on any person who, acting under color of state law, deprives another person of rights and privileges secured by the Constitution and laws of the United States.   42 U.S.C. § 1983.   Accordingly, in any action under § 1983, the court must begin its analysis by identifying the precise constitutional or statutory violation that the defendant allegedly committed.   See Safar, 859 F.3d at 245 ("The first step in any such claim is to pinpoint the specific right that has been infringed.") (citing Baker v. McCollan, 443 U.S. 137, 140 (1979)).

In this case, Rios contends that his continued detention for 48 hours based on the ICE detainer and administrative warrant breached two constitutional provisions: the Fourth Amendment and the Fourteenth Amendment's Due Process Clause.   More specifically, Rios contends that his continued detention constituted an unreasonable seizure and violated his substantive due process rights.   See Pl.'s Br. in Opp'n 20–25, Dkt. No. 14.[3]

Jenkins has moved to dismiss the § 1983 claims on multiple grounds.   Among other arguments, the defendant contends that the plaintiff has no freestanding due process claim based on his continued detention, that the plaintiff's continued detention at the request of ICE did not

---

[3] Rios initially appeared to assert that the defendant violated his right to procedural due process.   In response to such claim, the defendant argued that the plaintiff failed to allege a cognizable violation of his procedural due process rights and that such claim is barred by the doctrine of qualified immunity.   In his brief in opposition, the plaintiff did not contest the defendant's arguments as to the viability of any procedural due process claim.   Instead, the plaintiff asserted that the defendant violated his substantive due process rights.   See Pl.'s Br. in Opp'n 24–25.

9

violate the Fourth Amendment, and that the defendant is entitled to qualified immunity.  The court will address each claim in turn.

### A.     Fourteenth Amendment

Turning first to the Fourteenth Amendment claim, the court agrees with Sheriff Jenkins that the Due Process Clause is not the proper lens through which to evaluate the validity of Rios' continued detention at the request of ICE.  "Compared to the 'more generalized notion' of due process, the Fourth Amendment 'provides an explicit textual source of constitutional protection against [unreasonable seizures and arrests].'"  Safar, 859 F.3d at 345 (alterations in original) (quoting Graham, 490 U.S. at 395); see also Brooks, 85 F.3d at 183 ("The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and the seizure of an individual effected without probable cause is unreasonable.").  "Detention, of course, is a type of seizure of the person to which Fourth Amendment protections attach," Alcocer v. Mills, 906 F.3d 944, 953 (11th Cir. 2018), and courts have treated an individual's continued detention on the basis of an ICE detainer as a "new seizure for Fourth Amendment purposes," Morales v. Chadbourne, 793 F.3d 208, 217 (1st Cir. 2015).   If a constitutional claim is covered by a specific constitutional provision, such as the Fourth Amendment, "the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."  United States v. Lanier, 520 U.S. 259, 272 n.7 (1997).

Applying these principles, the court concludes that Rios' claim of unlawful detention falls under the Fourth Amendment, rather than the Fourteenth Amendment's Due Process Clause.  As noted above, the Fourth Amendment specifically prohibits unreasonable seizures.  Because the Fourth Amendment provides an explicit source of protection for the right that the defendant allegedly violated, it governs the analysis of the plaintiff's claim under § 1983.  See Alcocer, 906

10

F.3d at 954–55 (holding that the Fourth Amendment governed the plaintiff's claim that her detention was unlawfully prolonged based on information provided by ICE); C.F.C. v. Miami-Dade Cty., 349 F. Supp. 3d 1236, 1265–66 (S.D. Fla. 2018) (holding that the plaintiffs' § 1983 claim arising from their continued detention at the request of ICE must be analyzed under the Fourth Amendment rather than the Fourteenth Amendment); Abriq v. Hall, 295 F. Supp. 3d 874, 882 (M.D. Tenn. 2018) (concluding that a claim for illegal seizure brought by a plaintiff detained on the basis of an ICE detainer "falls under the Fourth Amendment, not the Fourteenth"). Accordingly, the court will grant Jenkins' motion to dismiss Count I.[4]

### B.  Fourth Amendment

In moving to dismiss the Fourth Amendment claim asserted in Count II, Jenkins contends that such claim is barred by the doctrine of qualified immunity.   For the following reasons, the court agrees.

The doctrine of qualified immunity shields government officials from civil damages liability "so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[5]   Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)).   "To overcome this shield, a

---

[4] As noted above, the plaintiff appears to have abandoned any separate procedural due process claim.   In any event, because the facts alleged do not establish a clear procedural due process violation of which a reasonable official in Jenkins' position would have known, such claim is barred by the doctrine of qualified immunity, which is discussed more fully below.   Succinctly stated, the plaintiff does not cite to any authority indicating that it was clearly established that he was entitled to a hearing or other process before being detained for an additional 48 hours at the request of ICE.

[5] Qualified immunity applies to claims for monetary relief against officials in their individual capacities, but is not a defense against claims for declaratory or injunctive relief.   Wall v. Wade, 741 F.3d 492, 498 n.9 (4th Cir. 2014).   During the hearing on the defendant's motion, the plaintiff made clear that he was only seeking relief in the form of damages.   To the extent that the complaint also requested a judgment declaring that it was unlawful for the defendant to detain the plaintiff at the request of ICE in the absence of a 287(g) agreement, such relief is unavailable.   See Corliss v. O'Brien, 200 F. App'x 80, 84 (3d Cir. 2006) ("Declaratory judgment is inappropriate solely to adjudicate past conduct.   Nor is declaratory judgment meant simply to proclaim that one party is liable to another."); see also Williams v. City of Cleveland, 907 F.3d 924, 933 (6th Cir. 2018) (holding that the plaintiff did not have standing to request declaratory relief since she was no longer in the defendant's custody at the time the action was filed and the particular policy at issue was no longer in place).

plaintiff must demonstrate that: (1) the defendant violated the plaintiff's constitutional rights, and (2) the right in question was clearly established at the time of the alleged violation." Adams v. Ferguson, 884 F.3d 219, 226 (4th Cir. 2018); see also Crouse v. Town of Moncks Corner, 848 F.3d 576, 583 (4th Cir. 2017) (citing Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)). An official is entitled to qualified immunity if either prong is not satisfied. Pearson, 555 U.S. at 244–25.

The Supreme Court has held that lower courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236. The Court has urged lower courts to "think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'" al-Kidd, 563 U.S. at 735 (quoting Pearson, 555 U.S. at 236–37). Therefore, addressing the second prong before the first is especially appropriate in cases where "a court will rather quickly and easily decide that there was no violation of clearly established law." Pearson, 555 U.S. at 239. Because this is one of those cases, the court will proceed directly to the second prong.

Under the second prong, a government official is entitled to qualified immunity if the right at issue was not "clearly established at the time of the challenged conduct." al-Kidd, 563 U.S. at 735. The Supreme Court has explained that a constitutional right is clearly established where "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Reichle v. Howards, 566 U.S. 658, 664 (2012) (quoting al-Kidd, 563 U.S. at 741). Thus, "if there is a legitimate question as to whether an official's conduct constitutes a constitutional violation, the

12

official is entitled to qualified immunity." Martin v. St. Mary's Dep't of Soc. Servs., 346 F.3d 502, 505 (4th Cir. 2003) (internal quotation marks omitted); see also Pearson, 555 U.S. at 244 ("The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law.").

The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." al-Kidd, 563 U.S. at 742. Instead, the court must determine "whether the violative nature of particular conduct is clearly established." Id. "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition." Mullenix, 136 S. Ct. at 308 (internal quotation marks omitted). The Supreme Court has recognized that "[s]uch specificity is especially important in the Fourth Amendment context, where the Court has recognized that [it] is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." Id. (internal quotation marks omitted); see also al-Kidd, 563 U.S. at 742 (noting that the "general proposition . . . that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established"); City & Cty. of San Francisco v. Sheehan, 135 S. Ct. 1765, 1776 (2015) (emphasizing that "[q]ualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures."). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987). If the defendant's actions "were not clearly unlawful when performed," he is entitled to qualified immunity. Francis v. Giacomelli, 588 F.3d 186, 196 (4th Cir. 2009).

In this case, Rios contends that at the time of his detention, "it was clearly established that local law enforcement in Virginia lack[] authority to effectuate civil immigration arrests absent a 287(g) agreement," and that local law enforcement officers violate the Fourth Amendment when they detain an individual solely based on an ICE detainer and administrative warrant. Pl.'s Br. in Opp'n 26, Dkt. No. 14. To support these arguments, Rios cites to two cases: Arizona v. United States, 567 U.S. 387 (2012); and Santos v. Frederick County Board of Commissioners, 725 F.3d. 451 (4th Cir. 2013).[6] For the following reasons, the court concludes that neither of the cited decisions placed it beyond debate that Jenkins' actions violated the Fourth Amendment, and that a reasonable official in Jenkins' position could have believed that Rios' continued detention at the request of ICE was lawful.

Arizona was a preemption case decided under the Supremacy Clause of the United States Constitution. 567 U.S. at 399. The Supreme Court ultimately held that federal law preempted a provision of an Arizona statute that authorized state officers to independently arrest a person, without a warrant, if the officer had probable cause to believe that the person had committed an offense that made him removable from the United States. 567 U.S. at 410. In defense of the statute, the State of Arizona emphasized that 8 U.S.C. § 1357(g)(10)(B) permits state officers to "cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." Id. However, the Supreme Court found the State's reliance on this provision unpersuasive. Id. The Court recognized that there "may be

---

[6] Rios also submits that his position finds support in letter opinions issued by the Attorney General of Virginia. However, such opinions are "not binding" in state or federal court. Twietmeyer v. City of Hampton, 497 S.E.2d 858, 861 (Va. 1998); City of Va. Beach v. Va. Restaurant Ass'n, 341 S.E.2d 198, 200 (Va. 1986). Accordingly they "cannot be considered in deciding whether particular conduct violated clearly established law for purposes of adjudging entitlement to qualified immunity." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 538 n.1 (4th Cir. 2017); see also Feminist Majority Found. v. Hurley, 911 F.3d 674, 706 n.18 (4th Cir. 2018) (declining to consider a nonbinding unpublished opinion from the United States Court of Appeals for the Sixth Circuit in determining whether particular conduct violated clearly established law).

some ambiguity as to what constitutes cooperation" under this provision, but concluded that "no coherent understanding of [the term 'cooperate'] would incorporate the unilateral decision of state officers to arrest an alien for being removable absent any request, approval, or other instruction from the Federal Government." Id. at 410. The Court noted that DHS had provided "examples of what would constitute cooperation under federal law," and that such examples include "situations where States . . . provide operational support in executing a warrant, or allow federal immigration officials to gain access to detainees held in state facilities." Id. The Court found that the "unilateral state action to detain authorized by [the Arizona statute went] far beyond these measures, defeating any need for cooperation." Id.

As the foregoing summary demonstrates, Arizona addressed the viability of "unilateral arrests by state law enforcement officers—arrests for immigration offenses made without a request, approval, or other instruction from the federal government." Tenorio-Serrano v. Driscoll, 324 F. Supp. 3d 1053, 1065 (D. Ariz. 2018). The decision plainly indicates that such arrests are not authorized under § 1357(g)(10). See Santos, 725 F.3d at 466 (observing that Arizona "makes clear that under Section 1357(g)(10) local law enforcement officers cannot arrest aliens for civil immigration violations absent, at a minimum, direction or authorization by federal officials."). Significantly, however, the instant case does not involve a state or local law enforcement officer's "unilateral decision . . . to arrest an alien for being removable absent any request, approval, or other instruction from the Federal Government." Arizona, 567 U.S. at 410. Instead, the complaint makes clear that the plaintiff was detained upon receipt of a "request from federal immigration authorities" in the form of an immigration detainer and administrative warrant. Compl. ¶¶ 1, 3. Contrary to the plaintiff's assertion, the Supreme Court's decision in Arizona does not suggest, much less clearly establish, that a written 287(g) agreement is required

15

in order for a state or local law enforcement official to lawfully detain a removable alien at the request of ICE. Nor does it otherwise make clear that compliance with ICE detainers and administrative warrants falls outside the scope of permissible "cooperat[ion]" with "detention" under § 1357(g)(10)(B). Instead, the Arizona decision can be read to suggest that the challenged conduct in this case—detaining an individual in accordance with an ICE detainer request and administrative warrant—"w[as] not unilateral and thus, did not exceed the scope" of Jenkins' authority to cooperate with federal immigration enforcement efforts. United States v. Ovando-Garzo, 752 F.3d 1161, 1164 (8th Cir. 2014) (citing Arizona, supra); see also City of El-Cenizo v. Texas, 890 F.3d 164, 189 (5th Cir. 2018) (observing that an ICE detainer request is the type of "federal direction" that was missing in Arizona). Thus, the Supreme Court's decision did not clearly establish the unconstitutionality of the detention at issue in this case.

The same is true for the Fourth Circuit's decision in Santos v. Frederick County Board of Commissioners. In that case, the plaintiff alleged that local deputies violated her Fourth Amendment rights by seizing and arresting her based on an outstanding civil warrant for removal issued by ICE. 725 F.3d at 457, 463. At the time of the plaintiff's seizure, "the deputies' only basis for detaining Santos was the civil ICE warrant" reported by dispatch. Id. at 465. The deputies were not authorized to engage in immigration law enforcement pursuant to a 287(g) agreement, and they had not yet confirmed that the warrant was active. Id. at 465–66. Although ICE ultimately requested that Santos be detained on its behalf, the "request . . . came fully forty-five minutes after Santos had already been arrested." Id. at 466. Therefore, it was "undisputed that the deputies' initial seizure of Santos was not directed or authorized by ICE." Id. Applying Arizona, the Fourth Circuit held that, "absent express direction or authorization by federal statute or federal officials, state and local law enforcement officers may not detain or arrest

an individual solely based on known or suspected civil violations of federal immigration law." Id. at 465. Based on the facts presented, the Court concluded that "the deputies violated Santos's rights under the Fourth Amendment when they seized her after learning that she was the subject of a civil immigration warrant and absent ICE's express authorization or direction." Id. at 468. "Thus, Santos makes clear that when, absent federal direction or authorization, a state or local officer detains or arrests someone based solely on a civil immigration violation, the officer violates the individual's Fourth Amendment right to be free from unreasonable searches and seizures." Sanchez v. Sessions, 885 F.3d 782, 789 (4th Cir. 2018).

The facts of this case are readily distinguishable from those in Santos. Jenkins did not detain Rios based on a suspected civil immigration violation before communicating with federal authorities. Instead, Jenkins held Rios for up to 48 additional hours pursuant to the immigration detainer and administrative warrant issued by ICE. As indicated above, the detainer specifically requested that Jenkins maintain custody of Rios for an additional 48 hours beyond the time when he would otherwise have been released from the sheriff's custody. And unlike Santos, Jenkins received the ICE detainer and administrative warrant long before the plaintiff's detention was temporarily extended. While Rios argues that the detainer is "merely a request" and therefore "does not constitute 'ICE's express authorization or direction' within the meaning of Santos," this argument finds no support in the Fourth Circuit's decision. Rather than faulting the form of the request from ICE, the Fourth Circuit took issue with the timing of it—namely, the fact that the officers detained Santos before receiving any communication or direction from ICE:

> Although there may be no dispute as to whether ICE directed the deputies to detain Santos at some point, the key issue for our purposes is when ICE directed the deputies to detain her. We conclude that the deputies seized Santos when Deputy Openshaw told her to remain seated—after they had learned of the outstanding ICE warrant but before dispatch confirmed with ICE that the

> warrant was active. Indeed, ICE's request that Santos be detained
> on ICE's behalf came fully forty-five minutes after Santos had
> already been arrested. Therefore, it is undisputed that the deputies'
> initial seizure of Santos was not directed or authorized by ICE.

Santos, 725 F.3d at 466 (emphasis in original); see also City of El Cenizo, 890 F.3d at 189

(observing that the seizure in Santos violated the Fourth Amendment because "there was no

federal request for assistance before the seizure"). The Court in no way suggested that when a

state or local law enforcement officer detains someone after being requested to do so by ICE, the

officer could violate the Fourth Amendment prohibition against unreasonable seizures. Thus, the

Fourth Circuit's decision in Santos did not put Jenkins on notice that detaining the plaintiff under

the circumstances presented here would violate the plaintiff's constitutional rights.

Rios does not cite, and the court has not found, any other preexisting decisions from the

Fourth Circuit or its sister circuits which clearly established the unlawfulness of Jenkins' actions.

See Santos, 725 F.3d at 468 (emphasizing that the right at issue "must have been clearly

established at the time an official engaged in a challenged action") (citing Harlow v. Fitzgerald,

457 U.S. 800, 818 (1982)). Although the Third Circuit had determined that ICE detainers are

"permissive," rather than "mandatory," Galarza v. Szalczyk, 745 F.3d 634, 642 n.9 (3d Cir. 2014),

no circuit had held that it would violate the Fourth Amendment to comply with an ICE detainer

and administrative warrant. The same is true today. The court recognizes that some district

courts have recently determined that § 1357(g)(10) should not be "read to allow local law

enforcement to arrest individuals for civil immigration violations at the request of ICE,"[7] and that

---

[7] District courts that have narrowly construed § 1357(g)(10) have reasoned that "if 'otherwise cooperate' . . . were read to allow local law enforcement to arrest individuals for civil immigration violations at the request of ICE, the training, supervision and certification pursuant to a formal agreement between DHS and state officers described in the remaining provisions of Section 1357(g) would be rendered meaningless." Creedle v. Miami-Dade Cty., 349 F. Supp. 3d 1276, 1304 (S.D. Fla. 2018); see also Lopez-Aguilar v. Marion Cty. Sheriff's Dep't, 296 F. Supp. 3d 959, 975 (S.D. Ind. 2017) (agreeing with the proposition that § 1357(g)(10) cannot be read to authorize "free-floating state-local cooperation . . . without tending to nullify the requirement of federal 'training, certification, and supervision' otherwise established by Section 1357(g)") (citations omitted).

18

holding someone pursuant to an ICE detainer, without separate probable cause to believe that the person has committed a crime, "gives rise to a Fourth Amendment claim against the local law enforcement." Creedle v. Miami-Dade Cty., 349 F. Supp. 3d 1276, 1304 (S.D. Fla. 2018). However, other district courts have held to the contrary. See, e.g., Lopez-Lopez, 321 F. Supp. 3d at 801 ("Plaintiff has not presented a plausible Fourth Amendment claim against Allegan County as a matter of law. ICE issued a facially valid administrative warrant for his arrest, based on a determination that there was probable cause to believe that he was removable. Then, ICE requested that the localities detain Aaron through the use of an I-247 detainer—which also recited the basis for probable cause. Allegan County cooperated by complying with the federal government's request (as allowed pursuant to § 1357(g)(10)) 'by providing operational support' by holding Aaron until ICE could take custody of him the following day. Based on this record, with all inferences to Aaron, Allegan County did not run afoul of the Fourth Amendment prohibition against unreasonable seizures."). Thus, even now, it cannot be said that the constitutional and statutory questions at issue in this case are "beyond debate." al-Kidd, 563 U.S. at 741; see also Gates v. Khokhar, 884 F.3d 1290, 1393 (11th Cir. 2018) ("That judges disagree about a constitutional issue is itself evidence that a right is insufficiently clearly established for purposes of denying qualified immunity.") (citing Wilson v. Layne, 526 U.S. 603, 618 (1999)).

In sum, the court is convinced that Jenkins did not violate clearly established federal law by detaining Rios for an additional 48 hours pursuant to the ICE detainer and administrative warrant. At the time of the plaintiff's detention, existing precedent suggested that, "[e]ven in the absence of a written agreement," local law enforcement officials may cooperate with ICE in the detention or removal of aliens not lawfully present in the United States, Santos, 725 F.3d at 464, when such cooperation is expressly "request[ed]" or authorized by ICE, Arizona, 567 U.S. at 410; see also

_Santos_, 725 F.3d at 465–66.   In this case, the ICE detainer specifically requested that the Jail hold Rios for up to 48 additional hours after he would otherwise be released, and both the detainer and the administrative warrant attested to probable cause of removability.   Consequently, Jenkins had no reason to believe that complying with the 48-hour detainer request would violate the Fourth Amendment prohibition against unreasonable seizures.   Because existing precedent "did not put [the sheriff] on notice that his conduct would be clearly unlawful, [dismissal] based on qualified immunity is appropriate."   _Saucier v. Katz_, 533 U.S. 194, 202 (2001) (emphasis added).   Thus, Jenkins' motion will be granted with respect to Count II.[8]

## II.   Claim under state law

In Count III of the complaint, Rios claims that he was falsely imprisoned in violation of Virginia law.   Having dismissed both federal claims, the court declines to exercise supplemental jurisdiction over Count III, and will dismiss that count without prejudice.   See 28 U.S.C. § 1367(c)(3) (authorizing a district court to decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction"); see also _Carnegie-Mellon Univ. v. Cohill_, 484 U.S. 343, 350 (1988) ("When . . . the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice"); _Banks v. Gore_, 738 F. App'x 766, 773 (4th Cir. 2018) ("Generally, when a district court dismisses all federal claims in the early stages of litigation, it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice.").

---

[8] In light of the foregoing analysis, the court finds it unnecessary to address the defendant's remaining challenges to the viability of the constitutional claims asserted under § 1983.

## **Conclusion**

For the reasons stated, the court will grant the defendant's motion with respect to the plaintiff's claims under 42 U.S.C. § 1983. The remaining claims under state law will be dismissed without prejudice.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This _15th_ day of July, 2019.

                                       _____

                                       Senior United States District Judge